COURT OF APPEALS OF VIRGINIA


Present:   Judge McClanahan, Senior Judges Coleman and Annunziata


VANESSIA NORTHOVER

v.      Record No. 2535-04-1

CITY OF HAMPTON
  DEPARTMENT OF SOCIAL SERVICES            MEMORANDUM OPINION[*]
                                                   PER CURIAM
SAUL ORTIZ, SR.                                DECEMBER 13, 2005

v.      Record No. 2622-04-1

CITY OF HAMPTON
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

(Corry Smith-Ashley, on brief), for appellant Vanessia Northover.

(Charles E. Haden, on brief), for appellant Saul Otiz, Sr.

(A. Paul Burton, City Attorney; Lesa J. Yeatts, Deputy City
Attorney; William G. Broaddus; Tennille J. Checkovich; A.J.
Stone, Jr., guardian *ad litem*; McGuireWoods LLP, on briefs), for
appellee.


        Vanessia Northover, mother, and Saul Ortiz, Sr., father, appeal a decision of the trial court

terminating their parental rights to their son, S.O., pursuant to Code § 16.1-283(C).  They also

appeal decisions of the trial court changing the permanency planning goals to "adoption" for S.O.

and "permanent foster care" for E.O., their daughter.  Mother appeals the trial court's decision

changing the permanency planning goal to "permanent foster care" for her daughter, A.N.  Upon

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reviewing the record and the briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decisions of the trial court. Rule 5A:27.

On appeal, we view the evidence in the light most favorable to the prevailing party below, here DSS, and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

A.N., E.O. and S.O. entered foster care on February 8, 2002 as a result of an abuse and neglect petition and after mother was arrested for a grand larceny charge. An ongoing case had previously been established based on concerns about the parents' failure to meet S.O.'s special and extensive medical needs, substance abuse issues among the parents, the poor school attendance of the children, and the unsuitable housing of the family. The Hampton Department of Social Services (DSS) provided the family with food, furniture, energy assistance, housing, and child care. DSS initially pursued a goal of "return to parents." Both parents were assigned responsibilities to achieve reunification with the children. The parents were to secure a suitable home for six months, attend parental counseling and follow recommendations therefrom, maintain visitation with the children, maintain contact with DSS and update DSS on their progress and need for further assistance. The parents were also to obtain employment and drug and alcohol assessments, demonstrate their ability to meet S.O.'s special needs, and make proper daycare arrangements for the children.

In April 2002, the Hampton Juvenile and Domestic Relations District Court (JDR court) entered dispositional orders for A.N., S.O. and E.O., finding that continued placement in the family home would be contrary to the welfare of the children. In June 2002, the JDR court entered foster care review orders for the children, finding that reasonable efforts had been made by DSS to reunite the children with their parents and approving the continuation of the goal of "return to parent." A review of the foster care service plan, dated September 2002, indicates that DSS continued to

provide the family with social work counseling regarding the goals of "return to parent." However, mother reported to the social worker that she was not ready to have the children returned to her due to repairs that were needed at the family's residence.

In March 2003, DSS again reviewed the foster care service plans and determined that mother had not returned to work after giving birth to another child. DSS indicated that because mother was unwilling to follow through with the service plan or provide DSS with written documentation to support her claims that she completed service plan tasks, the new goals for A.N., S.O. and E.O. would be "placement with relative."

In April 2003, the JDR court entered permanency planning orders for the three children, continuing custody of the children with DSS and approving the concurrent goals of "placement with relative" and "return to parent." The court ordered both parents to submit to psychological/parenting evaluations and complete substance abuse evaluations. The family moved in with friends, and father continued to make no efforts to regain custody of his children.

In January 2004, the JDR court entered orders changing the permanency planning goals to "permanent foster care" for A.N. and E.O. and "adoption" for S.O. In February 2004, DSS filed petitions to terminate the parental rights of the parents.

In May 2004, DSS prepared a report regarding the family's progress. The report states that mother refused to advise DSS of her address at that time and mother had recently maintained only "sporadic" contact with S.O. The report also states that mother participated in parenting classes, but she did not attend all of the classes. Mother continued to have contact with DSS and she completed a substance abuse evaluation, but she did not maintain a suitable home for six months and she did not obtain stable employment.

Father was reportedly employed, but he did not participate in any services offered by DSS. Since 2002, father had made "very minimal efforts" to regain custody of S.O. and his contact with

S.O. was "extremely sporadic." He also did not maintain a suitable home for six months. Father participated in a parenting class and a substance abuse evaluation, but he failed to obtain the results of the evaluation.

Neither mother nor father attended the hearing in the trial court. However, mother's counsel proffered that mother had maintained "somewhat sporadic" employment throughout the process, maintained regular visitation with S.O., and attended parenting classes. Counsel also indicated mother completed a parenting capacity evaluation and had sustained a "clean and suitable" home for the family in a boarding house. Mother's counsel asserted mother had substantially complied with the requirements of DSS.

Father's counsel proffered that father "show[ed] up on occasion" for visitation with S.O., father maintained regular employment, he participated in and completed a parenting class and parenting capacity evaluation, and he completed a substance abuse evaluation. Counsel also stated that father had resided in the "clean and suitable" rooming house for the past six months. Counsel argued father had substantially complied with the requirements of DSS.

The guardian *ad litem* for the children testified that S.O. is "in great shape" with a family who wishes to adopt him. He also stated that A.N. and E.O. were waiting for their parents to retrieve them and they needed "something solid," recommending termination of mother's and father's parental rights to S.O.

The trial court ruled that the evidence was sufficient to show both mother and father had failed to make substantial progress to remedy the situation that brought the children into foster care. The trial court entered an order terminating the parental rights of mother and father to S.O. The trial court also entered permanency planning orders approving foster care plans with a goal of adoption for S.O. and a goal of permanent foster care for E.O and A.N.

In reviewing a trial court's decision terminating parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). The trial court has "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795. "[W]hen based on evidence heard *ore tenus*," the trial court's judgment "will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

Code § 16.1-283(C) provides that a trial court may order termination of residual parental rights if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Viewed in the light most favorable to DSS, the prevailing party below, we conclude that the trial court did not err in ruling that DSS showed by clear and convincing evidence that termination of the residual parental rights of both mother and father was in S.O.'s best interest and that mother and father failed to remedy their situation. The evidence before the trial court showed that mother and father failed to comply with the foster care plans to return S.O. to them. The court-approved plan required the parents to maintain contact with S.O. and DSS, to secure and maintain steady employment, to secure a safe and stable place to live with the children, and to follow the recommendations of the substance abuse evaluations. However, father's contact with DSS and S.O. was infrequent. DSS was often unaware of father's whereabouts. In addition, father failed to obtain the results of his substance abuse evaluation.

Both parents moved frequently and were often unemployed. Neither parent attended the trial court hearing. Mother initially maintained visitation with S.O., but over time her visits became more sporadic. At one point, mother refused to advise DSS where the family was residing. At the time of the trial court hearing, mother had been employed only the last two weeks of the previous sixteen months. Mother attended some of the parenting classes and underwent the substance abuse evaluation. However, despite testing positive for cocaine, she failed to follow the recommendations of the program.

Furthermore, the evidence showed that S.O. was doing well in foster care and the three children needed permanency in their lives. The children had been in the custody of DSS since February 2002. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Srvs, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Clear and convincing evidence proved that it was in the best interests of S.O. to terminate the residual parental rights of mother and father due to their failure to substantially remedy the conditions that resulted in foster care placement.

Code § 63.2-908 provides, in part: "A court shall not order that a child be placed in permanent foster care unless it finds that (i) diligent efforts have been made by the local department to place the child with his natural parents and such efforts have been unsuccessful . . . ." DSS pursued the goals of "return to parent" for A.N., E.O., and S.O. from February 2002 until April 2003 when DSS requested concurrent goals of "return to parent" and "placement with relative." In January 2004, the JDR court approved the goal of "permanent foster care" for A.N. and E.O. and "adoption" for S.O., which the trial court also approved.

During the entire process, DSS offered both parents services. However, as discussed above, the evidence showed the parents failed to fulfill the responsibilities set forth in the foster care plans

for reunification.  The parents' compliance with the obligations established by DSS was necessary to establish that they were planning for the children's future and that they were substantially remedying the conditions that resulted in the children's placement in foster care.  In addition, S.O., who has serious medical needs, was doing well with a family interested in adopting him.  Therefore, the trial court did not abuse its discretion by determining the changes in the foster care plans were in the best interests of the children.

Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>